IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-30067 |
| | ) | |
| TODD SHEFFLER, | ) | |
| WILLIE HEDDEN, and | ) | |
| ALEX BANTA, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**SUE E. MYERSCOUGH, United States District Judge:**

Before the Court is Defendant Alex Banta's Motion in Limine No. 7 Pertaining to the Admission of Certain Testimony [d/e 85].

Defendant Todd Sheffler adopts this motion in its entirety.

Defendants Banta and Sheffler stand indicted on a number of serious charges which arise from an incident at a state correctional center, in which an inmate, Larry Earvin, died from injuries alleged to have been sustained during that incident. Defendant Banta moves pursuant to Federal Rule of Criminal Procedure 16(d), Federal Rule of Evidence 104 and the inherent authority of this Court to manage

1

the trial in this case, for entry of an Order regarding the admission of certain testimony pertaining to the knowledge of "everyone" that there are no cameras in the segregation unit and officers beating inmates in that unit due to no cameras.

Specifically, Defendants Banta and Sheffler ask the Court to bar the following testimony and direct the Government to inform its witnesses about the Order:

1. Any statement that everyone knows there are no cameras in the segregation unit or in the holding cell in the segregation unit, or words to that effect;

2. Any statement that officers beat inmates in the segregation unit or its holding cell because they know that there are no cameras in these locations, or words to that effect;

3. Any testimony from Rose Ashcraft about what Angie Whitaker told to her or wrote to her; and

4. Any testimony by Angie Whitaker about what Blake Haubrich said to her when she interacted with him one or two years before May 2017, as described above.

### Statements Regarding What "Everyone Knows"

The motion provides that the Government has disclosed statements made by various correctional officers and by health care staff who worked at the correctional facility where the alleged incident occurred. These individuals have stated: (1) that it was well known that there were no cameras in the vestibule area leading from the outside into the segregation unit; and (2) that correctional staff beat inmates in the segregation holding cell because there were no surveillance cameras.

Defendants Banta and Sheffler state that no disclosure has been made by the Government of any person that stated the Defendants: (a) knew that there were no cameras in that segregation unit vestibule area; (b) knew that there were no cameras in the segregation holding cell; or (c) that they beat any inmate in the segregation holding cell or previously in the segregation unit vestibule area.

The Defendants claim any statement by a witness that "everyone knows" something is opinion testimony. Defendants Banta and Sheffler state that the Government has disclosed no opinion witness who would offer testimony about what everyone knew at the correctional facility about the absence of cameras in the segregation

unit.  Moreover, the Government has disclosed no statements by any person who claims to personally know that Banta and Sheffler knew there were no cameras in the segregation unit.  Federal Rule of Evidence 602 requires that lay witnesses testify based on personal knowledge.

The Government's theory of the case is that Defendants chose to assault inmate Larry Earvin in the segregation unit vestibule area because of the known lack of surveillance cameras.  It is important to explain to the jury why there is no video of the assault that occurred in that area.  The Government disputes Defendants' contention that no one personally knew that Defendants were aware the segregation unit lacked cameras and that witness testimony on the point could only be inadmissible hearsay or opinion.

Jurors are permitted and instructed to use their common sense in weighing the evidence and to make reasonable inferences based on the evidence, including circumstantial evidence.  See <u>Pattern Criminal Jury Instructions of the Seventh Circuit (2020 Ed.)</u> Nos. 2.02, 2.03.  Moreover, in determining a defendant's knowledge, jurors are instructed to consider what the defendant did, not just what the defendant said.  See <u>Pattern Criminal Jury Instructions of the</u>

Seventh Circuit (2020 Ed.) No. 4.10.  The Government further notes that a prison official's knowledge of a fact "can be proven through circumstantial evidence" such as by showing that the fact "was so obvious that the official must have known about it."  Rowe v. Mize, 2013 WL 139675, at *2 (S.D. Ind. Jan. 11, 2013) (quoting Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004)).

As in the Defendants' Motion in Limine No. 2, the Government disputes Defendants' assertion that lay opinion testimony on this issue should have been disclosed under Federal Rule of Evidence 16. Federal Rule of Evidence 701 permits a lay witness to offer opinion testimony that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  The Government states that the admissibility of such testimony should be determined at trial.  The Defendants will be able to challenge any such opinions on cross-examination.  The Government contends, therefore, that the motion in limine to categorically exclude lay opinion testimony on these issues should be denied at this time.

The Court noted that there has to be foundation for testimony that the segregation unit lacked cameras. Testimony that "everyone knows" this will not be permitted. The Court otherwise will defer until trial ruling on the admissibility issue.

## Statement By Nurse Rose "Kathy" Ashcraft

Additionally, Defendants Banta and Sheffler seek to exclude statements reportedly made by LPN Angie Whitaker and reflected in an Incident Report of Nurse Rose "Kathy" Ashcraft. It is alleged Whitaker told Ashcraft that correctional staff "beat up" inmates in the segregation holding cell because there were no surveillance cameras. Defendants claim Ashcraft also reported that Lt. Blake Haubrich told Whitaker to stay out of their business and what staff do with the inmates. Banta and Sheffler claim it would be inadmissible double hearsay for Ashcraft to testify as to what Whitaker told her about what Lt. Haubrich told Whitaker. Moreover, Ashcraft stated Whitaker had previously told Ashcraft of other instances where correctional staff placed inmates in the segregation unit holding cell and "beat them up." Defendants contend each of these statements constitutes inadmissible hearsay under Rule 801(c).

Regarding the Defendants' hearsay objections, the Government notes that (1) a statement is not hearsay if it is not offered to prove the truth of the matter asserted in the statement, see Fed. R. Evid. 801(c)(2); and (2) a hearsay statement still may be admissible if it falls under the numerous exceptions to the rules against hearsay. See Fed. R. Evid. 803 & 804. The Government states it plans to introduce admissible evidence relating to the absence of surveillance cameras at the locations where Defendants' alleged assault of Larry Earvin occurred and to ask jurors to use their common sense and make reasonable inferences.

Because Defendants' motion in limine does not establish such evidence is unequivocally inadmissible, the Court will defer evidentiary rulings until trial so questions of foundation, relevance, and prejudice may be resolved in context.

### Statements by LPN Angie Whitaker

Defendants Banta and Sheffler state that the only disclosed statements by LPN Angie Whitaker are (1) what is contained in Ashcraft's report, which Whitaker states in her video interview has nothing to do with this case; (2) an incident report made by Whitaker in which she makes no mention of the absence of cameras or staff

7

beating inmates; and (3) a 43+ minute May 24, 2018 videotape interview of Whitaker by law enforcement in which she makes no mention of the absence of cameras or staff beating inmates. Defendants contend it would be inadmissible hearsay for Whitaker to testify about what Lt. Haubrich told her. Moreover, unless Whitaker has personal knowledge that Banta or Sheffler engaged in this conduct, Whitaker's statements to Nurse Ashcraft and Lt. Haubrich are not relevant.

Nurse Ashcraft's incident report also includes a general statement from Whitaker regarding one occasion when bored correctional staff took an inmate from the segregation unit holding cell and beat him up. What Whitaker said in her video interview was that what she reported to Ashcraft was about an incident from about a year or two before and involved an interaction with Lt. Haubrich. Whitaker was treating an inmate and did not know what had happened to the inmate when she told Lt. Haubrich "don't be pulling any of your crap." Whitaker claims Lt. Haubrich "took it wrong" and told her not to be accusing his officers of anything. In the video interview, Whitaker stated she did not take Haubrich's statement to mean to not talk about the incident. Whitaker did not say whether

Banta and/or Sheffler were involved or even present with this situation. The Defendants claim this is inadmissible hearsay under Federal Rule of Evidence 805 and none of Whitaker's statements—including any statements about what people know about the absence of cameras—are admissible under the Rules of Evidence.

For the reason previously stated, the Court will defer consideration of this issue until trial.

### Statement by Lt. Haubrich

Defendants Banta and Sheffler state that Lt. Haubrich was interviewed by law enforcement and testified before a grand jury. According to Government disclosures, Lt. Haubrich made no mention of a conversation with LPN Whitaker. Lt. Haubrich also made no mention of cameras. Because the Government has made no other disclosures about statements by Lt. Haubrich, Banta and Sheffler claim the Government should be barred from giving any testimony about cameras or lack of cameras in the segregation unit or what officers may or may not do in the segregation unit because there are no cameras there.

The Court concludes that the admissibility of lay opinion testimony such as this is better determined at trial and thus defers a ruling until then.

### Statements of Warden Cameron Watson

Defendants Banta and Sheffler state that, according to Warden Cameron Watson's interview with law enforcement disclosed by the Government, Watson states "it is known among staff that segregation has limited camera coverage (on the segregation wing only)." Watson is not asked whether the other Defendants knew this or how they knew this. Defendants contend such testimony should be barred as inadmissible hearsay.

For the reasons previously noted, the Court will defer consideration of hearsay objections until trial.

## **CONCLUSION**

For the foregoing reasons, the Court will defer until trial ruling on the evidentiary issues as to witness testimony raised in the Defendants' Motion in Limine No. 7.

ENTER: June 30, 2021

/s/ *Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE