IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-30067 |
| | ) |
| TODD SHEFFLER, | ) |
| WILLIE HEDDEN, and | ) |
| ALEX BANTA. | ) |
| | ) |
| Defendants. | ) |

**GOVERNMENT'S RESPONSE TO
DEFENDANT BANTA'S MOTION IN LIMINE 2-1**

The United States of America, by its attorneys, Douglas J. Quivey,

Acting United States Attorney for the Central District of Illinois, and

Timothy A. Bass and Eugene L. Miller, Assistant United States Attorneys,

respectfully submits its response in opposition to Defendant Banta's

motion in limine 2-1 and states the following:

**Introduction**

Defendant Banta has filed motion in limine 2-1, seeking to exclude

any photographs following Mr. Earvin's surgery at St. John's hospital

and all autopsy photographs of Mr. Earvin, depicting his critical

condition and the multiple internal injuries caused by the alleged assault

by Defendants Banta, Sheffler, and Hedden. As the only support for this

motion, Defendant Banta alleges that the photographs are unfairly

prejudicial under Rule 403 of the Federal Rules of Evidence. Contrary to Defendant Banta's motion, the hospital and autopsy photographs are critical and highly probative evidence depicting Mr. Earvin's condition and multiple internal injuries resulting from the assault; they will assist Dr. Collier and Dr. Norfleet in their testimony; and, most importantly, they confirm the government's theory about the manner in which the crimes were committed, including providing a clear picture of Mr. Earvin's injuries, the cause of his death, and the defendants' malice aforethought. *See, e.g., United States v. Rezaq*, 134 F.3d 1121, 1138 (D.C. Cir. 1998); *United States v. Soundingsides*, 820 F.2d 1232, 1242-43 (10th Cir. 1987); *United States v. Sarracino*, 340 F.3d 1148, 1169 (10th Cir. 2003); *United States v. Treas–Wilson*, 3 F.3d 1406, 1410 (10th Cir. 1993); *United States v. Corley*, 519 F.3d 716, 726 (7th Cir. 2008). Accordingly, Defendant Banta's motion should be denied.

## Background

On December 5, 2019, the defendants, Willie Hedden, Todd Sheffler, and Alex Banta were charged in a ten-count indictment with conspiracy to deprive civil rights, deprivation of civil rights, conspiracy to engage in misleading conduct, obstruction – falsification of document, and obstruction – misleading conduct.

2

The indictment alleges that as part of the conspiracy to deprive and deprivation of the rights of Larry Earvin, an inmate at the Western Illinois Correctional Center (WICC), and during their participation in the forcible escort of Mr. Earvin from his RI (D Wing) residential housing unit at WICC to the segregation housing unit on May 17, 2018, Defendants Sheffler, Hedden, and Banta assaulted Mr. Earvin without legal justification while he was restrained and handcuffed behind his back and while he posed no physical threat to the defendants or other correctional officers. The indictment further alleges that Defendant Sheffler, the lieutenant and most senior officer, also willfully failed to intervene to protect Mr. Earvin from being assaulted by subordinate officers, namely, Defendants Hedden and Banta, despite having the opportunity to do so, and that Defendant Hedden, the sergeant and senior officer to Defendant Banta, willfully failed to intervene to protect Mr. Earvin from being assaulted by a subordinate officer, namely, Defendant Banta, despite having the opportunity to do so. The indictment alleges that the assault resulted in bodily injury to Mr. Earvin, including multiple broken ribs and other serious internal injuries, and further resulted in Mr. Earvin's death. In the event the jury convicts the defendants on the conspiracy to deprive or deprivation of civil rights charges, they will be required to answer special questions

3

whether Larry Earvin sustained bodily injury or died as a result of the charged conspiracy; whether he suffered bodily injury as a result of the defendants' acts; and whether the conduct of the defendants contributed to or hastened Larry Earvin's death, even if that conduct by itself would not have caused his death. (Gov.Instrs. 24, 30A, 31A)

Defendant Hedden has pleaded guilty to certain charges in the indictment and agreed to testify at the trial of Defendants Sheffler and Banta. Defendant Hedden and other WICC officer/employee witnesses are expected to testify that the assault of Mr. Earvin that caused his multiple, severe injuries resulting in bodily injury and death occurred at the entrance to the segregation unit at WICC, after Defendant Sheffler had joined the escort of Mr. Earvin with Defendants Hedden and Banta. Defendant Hedden and other witnesses are further expected to testify that the assault included Defendant Banta jumping and landing on Mr. Earvin's torso with his knees and the defendants punching, kicking, and stomping on Mr. Earvin, resulting in multiple, external and internal injuries to Mr. Earvin, and his eventual death.

**Expected Expert Testimony from Dr. Patrick Collier and Dr. Norfleet**

At trial, the government intends to present expert testimony from Dr. Patrick Collier, a M.D. and Trauma Surgeon, and Dr. Gershom Norfleet, a M.D. and Forensic Pathologist. As Dr. Collier testified at the

4

*Daubert* hearing, he treated and performed surgery on Mr. Earvin after he was life-flighted (transported) to St. John's Hospital, which involved identification and treatment of Mr. Earvin's substantial internal injuries, including internal bleeding, broken ribs, a collapsed lung, a fractured sternum and shoulder, a fist-sized hole in the mesentery containing the blood supply to the colon, and partial removal of his colon and an ileostomy.

Dr. Gershom Norfleet performed the autopsy on Mr. Earvin, identified the injuries he sustained, including multiple areas of significant external and internal trauma, and concluded that Mr. Earvin's death was caused by complications of blunt thoracoabdominal trauma.

In sum, both experts will testify to the contents of Mr. Earvin's medical records, the injuries (external and internal) he sustained (including head trauma), the cause of and/or contributing factors to his death, the types of trauma that are likely to have caused his injuries (including being punched, kicked, jumped on, stomped on, etc.), the likelihood or certainty that the more serious types of trauma (kicking, jumping on, stomping on, etc.) are the causes of Mr. Earvin's internal injuries and contributed to or caused his death, rather than the result of mere punching, and to the likelihood that Mr. Earvin was not suffering

from these internal injuries prior to his arrival at the segregation unit while being escorted by Defendants Banta, Sheffler, and Hedden.

### Hospital and Autopsy Photographs

As part of Dr. Collier's testimony, and to assist with his testimony concerning Mr. Earvin's injuries and condition, the government intends to introduce one photograph of Mr. Earvin following surgery. (*See* Sealed Exhibit 1) This photograph depicts Mr. Earvin's condition and confirms that his condition was so critical that he needed to be intubated, his neck stabilized, and provided with blood due to the loss of blood from internal bleeding.

As a critical part of Dr. Norfleet's testimony, and to assist his testimony in describing the multiple external and internal injuries that Mr. Earvin sustained and the cause of his death, the government intends to introduce certain (not all) autopsy photographs, depicting Mr. Earvin's external injuries, broken ribs, sternum, and shoulder, and the multiple areas where he suffered substantial internal trauma and bleeding. (*See* Sealed Exhibit 1)[1] The hospital and autopsy photographs are highly probative and critical evidence in the government's case to aid and corroborate the testimony of the medical experts and to provide a clearer

---

[1] The government has withdrawn one of the photographs (Bates Page 1802) it previously advised the defendants would be presented at trial. That photograph is not part of Exhibit 1.

picture of Mr. Earvin's injuries, the cause of his death, the viciousness of the offense, and the defendants' malice aforethought.

## Issues in Dispute

In his original motion in limine 2, and now in his motion 2-1, Defendant Banta both expressly states (motion 2) and suggests (motion 2-1) that there is no dispute concerning the nature of the injuries Mr. Earvin suffered or the cause of death. These statements are inaccurate. As further stated in his motion 2-1, Defendant Banta clearly indicates that there is a dispute concerning the manner in which the alleged assault occurred, the location where the assault occurred, the severity and viciousness of the assault and Mr. Earvin's injuries (including a possible brain injury), the persons responsible for the assault, and their intent, and the cause of Mr. Earvin's death.

In addition, Defendant Banta has repeatedly indicated to the government that, with the exception of the fact of Mr. Earvin's death, all issues in this case are in dispute. These areas of dispute are again confirmed by Defendant Banta in his motion 2-1. As a result, neither defendant has expressed any willingness to stipulate to any of these issues. As stated by Defendant Banta in his prior motion in limine 5-1, he "is under no obligation to disclose its [sic] defense theories to the Government." (Def.Mot. 5-1 at 18 n.8)

As further confirmation that all issues, with the exception of the fact of Mr. Earvin's death, are in dispute or at least not stipulated to, in Defendant Banta's prior motion in limine 5-1, he disputes the "Government's characterization of the case" and alleges that it "is not, however, a full characterization of all of the facts of the events that unfolded on May 17, 2018," and that "Mr. Earvin was assaulted and/or sustained and/or likely sustained injuries at other places and at the hands of others[.]" (Def.Mot. 5-1 at 18 n.8)

Further, Defendant Banta has disclosed to the government that he intends to call his own expert witness, Dr. J. Scott Denton. Defendant Banta has disclosed that he intends to call Dr. Denton to challenge the government's evidence as to the manner in which the alleged assault occurred, the location where the assault occurred, the severity and viciousness of the assault and Mr. Earvin's injuries (including a possible brain injury), and the cause of Mr. Earvin's death. (*See* Sealed Exhibit 2)

Finally, in his motion to reconsider the Court's order concerning *voir dire* questions, Defendant Banta requests that the Court consider asking potential jurors about their "Healthcare experience[.]" (R.162 at 2) He states that "[a] key issue in this case is whether Defendant Banta's conduct caused serious bodily injury or death to the inmate[,]" and that

"questions going to the healthcare experience of potential jurors is clearly related to the issues in this case." (*Id.*)

## Applicable Law

Rule 401 of the Federal Rules of Evidence provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible, except when it is otherwise excluded by law or rule. Fed.R.Evid. 402. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Under Rule 403, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "Since most relevant evidence is, by its very nature, prejudicial, [the Seventh Circuit has] emphasized that evidence must be unfairly prejudicial to require exclusion." *United States v. Boswell*, 772 F.3d 469, 476 (7th Cir. 2014); *see, e.g., United States v. Andreas*, 216 F.3d 645, 665 (7th Cir. 2000) (noting that "probative evidence is always

prejudicial, but the question remains whether it is unfairly so"). "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Reese*, 666 F.3d 1007, 1016 (7th Cir. 2012); *see, e.g., Andreas*, 216 F.3d at 665 (finding no error in admitting evidence where the evidence "was not so shocking, repulsive or emotionally charged that its probative value was out-weighed by its prejudicial effect"). "When determining the admissibility of evidence under Rule 403, [a] Court employs a sliding scale approach: as the probative value increases, so does [the] tolerance of the risk of prejudice." *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012) (citing *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012)).

In the context of the admissibility of autopsy photographs, it is well established that "[a]utopsy photographs can have immense probative value, if for example they confirm the prosecution's theory about the manner in which the crime was committed." *United States v. Rezaq,* 134 F.3d 1121, 1138 (D.C. Cir. 1998). This is particularly true where the autopsy photographs aid in the testimony of the medical examiner and provide a clearer picture of the victim's injuries, the cause of his death, the viciousness of the offense, and the defendant's malice aforethought. *See, e.g., United States v. Soundingsides*, 820 F.2d 1232, 1242-43 (10th

Cir. 1987) (upholding admission of "undeniably gruesome" autopsy photographs that painted a clearer picture of the victim's injuries, cause of her death, and the defendant's malice aforethought); *United States v. Sarracino,* 340 F.3d 1148, 1169 (10th Cir. 2003) ("Without these photos, the prosecution would have been handicapped in its ability to convey the nature and extent of the beating to the jurors."); *United States v. Treas–Wilson*, 3 F.3d 1406, 1410 (10th Cir. 1993) (autopsy and crime scene photographs, though graphic, were relevant to the determination of the defendant's intent and state of mind); *United States v. Corley,* 519 F.3d 716, 726 (7th Cir. 2008) ("pictures depicted the state of McNeal's body after having been set afire, and were probative of the manner of death, the extent of the injuries, and the viciousness of the attack."); *Wilson v. Sirmons*, 536 F.3d 1064, 1114 (10th Cir. 2008), *opinion reinstated sub nom., Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009) (holding "gruesome" autopsy photographs properly admitted where "aided the medical examiner in his explanation of the wounds to the victim and manner of death" and were "relevant to show the cause of death and the intent of the attacker"); *United States v. Fields,* 483 F.3d 313, 355-56 (5th Cir. 2007); (The autopsy photos "helped the jury understand the medical examiner's testimony" and supported the Government's theory on the cause of death.); *United States v. Collins,* 368 Fed.Appx. 517, 521

11

(5th Cir. 2010) ("autopsy photographs also convey information vital to the Government's case. All four photos helped the jury understand the medical examiner's testimony regarding the results of the autopsy."); *United States v. Briseno*, 88 F. Supp. 3d 849, 851 (N.D. Ind. 2015) ("photographic evidence of the murder helps the jury understand the nature and severity of the charged conduct and is not unfairly prejudicial") (quoting *United States v. Rivera–Rodriguez*, 617 F.3d 581, 594–95 (1st Cir. 2010).

Moreover, "[g]ruesomeness alone does not make photographs inadmissible." *United States v. Naranjo*, 710 F.2d 1465, 1468 (10th Cir. 1983). In fact, "admitting gruesome photographs of the victim's body in a murder case ordinarily does not rise to an abuse of discretion where those photos have nontrivial probative value." *United States v. Fields*, 483 F.3d 313, 355 (5th Cir. 2007); *see also Kuntzelman v. Black*, 774 F.2d 291, 292–93 (8th Cir. 1985) (per curiam) (holding that the admission of "flagrantly gruesome" photographs did not violate the petitioner's right to due process because the photos "were at least arguably relevant and probative").

Similarly, under Rule 403 "the vicious, brutal nature of a defendant's conduct is not itself sufficient to justify a complete exclusion of evidence tending to show the defendant engaged in those acts." *United*

*States v. Lujan*, 603 F.3d 850, 856 (10th Cir. 2010). "In the guilt phase of a trial, courts have not allowed defendants to benefit from a Rule 403 exclusion for unfair prejudice simply because their conduct was of a grisly nature." *Id.* (citing *Soundingsides*, 820 F.2d at 1242-43); *United States v. Pepin*, 514 F.3d 193, 208 (2d Cir. 2008) (holding that in the guilt phase of a capital case, the district court should not exclude under Rule 403 "[e]vidence that defendant calmly dismembered the victims' bodies shortly after killing them")). Otherwise, a "defendant would be rewarded for his greater level of violence . . . because the more heinous nature of the acts would make it more likely that the district court would exclude evidence of those acts . . . on the grounds of unfair prejudice." *Lujan*, 603 F.3d at 858-59 ("In effect, the capital defendant would be rewarded for his greater level of violence and the greater seriousness of his prior offenses because the more heinous nature of the acts would make it more likely that the district court would exclude evidence of those acts at sentencing on the grounds of unfair prejudice.").

Finally, the government is "not required to sanitize its case because the victim has died." *United States v. Werther*, 2013 WL 1410136, at *1 (E.D. Pa. Apr. 8, 2013). And "a criminal defendant may not stipulate or admit his way out of the full evidentiary force" of the Government's case. *Old Chief,* 519 U.S. at 186. As the Supreme Court recognized in *Old*

13

*Chief*, the government must be given an opportunity "to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight." *Id.* at 187. "If . . . relevant evidence is inadmissible in the presence of other evidence related to it, its exclusion must rest not on the ground that the other evidence has rendered it 'irrelevant,' but on its character as unfairly prejudicial, cumulative or the like, its relevance notwithstanding." *Old Chief*, 519 U.S. at 179; *see also Doyle v. Filson*, 2020 WL 6205842, at *30 (D. Nev. Oct. 22, 2020) ("Doyle's argument that the autopsy photographs could not be utilized to show the cause of death where he did not dispute it is without merit. By pleading not guilty, a defendant puts all elements of the offense at issue."). "In a criminal trial, a jury is entrusted with the weighty obligation to find the facts and it is incompatible with that degree of trust to attempt to protect them from the evidence of the crime." *United States v. Tsosie*, 288 Fed.Appx. 496, 500 (10th Cir. 2008).

## Argument

Defendant Banta has filed motion in limine 2-1, again requesting that the Court exclude *all* hospital and autopsy photographs. As the sole basis for his motion, he alleges that the photographs are unfairly

14

prejudicial.[2] Because the motion is contrary to settled law and seeks to exclude highly probative evidence critical to the government's case, the government respectfully requests that it be denied.[3]

In this case, the government will be required to prove not only that Mr. Earvin was assaulted but that the defendants conspired to deprive and did deprive Mr. Earvin of his constitutional right against cruel and unusual punishment, they intended to do so, and that bodily injury and death resulted from the offenses. (*See* Gov.Instrs. 20, 25, 30A, 31A, Pattern Criminal Jury Instructions of the Seventh Circuit (2020 Ed.) at 205-06, 212-13 18 U.S.C. § 241, (Definition of "Bodily Injury" and Death)) A critical part of the government's case are the hospital and autopsy photographs, which visually depict Mr. Earvin's condition following the assault, his multiple external and internal injuries, and the cause of his death. These photographs are critical and highly probative

---

[2] Defendant Banta represents in his motion that the government has not disclosed any hospital photographs, and that he therefore understands that the government will not be introducing any hospital photographs at trial. (Def.Mot. at 3) This statement is incorrect. The government has advised counsel for both defendants that the government intends to introduce one photograph of Mr. Earvin following his surgery at St. John's hospital. The hospital photographs have previously been disclosed to the defendants and were admitted as Gov.Ex. 3 at the *Daubert* hearing. And the government has now specifically identified to the defendants the hospital photograph it intends to present at trial. The government therefore assumes, for purposes of this response, that Defendant Banta also seeks to exclude any hospital photographs.

[3] In the event the Court is not inclined to deny the motion in full prior to trial, the government suggests to the Court that, as with Defendant Banta's other pretrial motions, the Court defer ruling on the motion until trial when the Court can fully assess the non-trivial probative value of the photographs in light of all of the evidence.

15

because they will aid and corroborate the testimony of the medical experts and will provide a clearer picture of Mr. Earvin's injuries, the cause of his death, the viciousness of the offense, and the defendants' malice aforethought. Moreover, the photographs are highly probative of whether the force used against Mr. Earvin was "for the purpose of harming the prisoner" or a "good faith effort to maintain or restore security or order." *See* Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.) No 7.18, Eight Amendment: Excessive Force Against Convicted Prisoner – Elements. Accordingly, under the settled law described above, the photographs are relevant and admissible and certainly not "substantially outweighed" by the danger of unfair prejudice." *See* (case authority cited above).

Defendant Banta, however, argues that *all* of the photographs should be excluded as unfairly prejudicial and that the severity of the injuries and cause of death may be established by the government solely from witness testimony. But this argument is merely an effort to dilute the government's evidence and preclude the government from fully and accurately presenting to the jury the nature, viciousness, and extent of the assault of Mr. Earvin and the cause of his death. *See* (authority cited above). It is also an attempt by the defendants "to be rewarded for [their] greater level of violence. . ." *Lujan*, 603 F.3d at 858-59. These arguments

are therefore not proper grounds for exclusion of highly probative evidence. *See* (authority cited above). To the extent that there is any risk of *unfair* prejudice, the Court may give the jury a limiting instruction and limit the extent of the publication of the photographs to the jury, including prohibiting, if necessary, the jury's viewing of the photographs during deliberations.

Finally, in his original motion in limine 2, and now in his motion 2-1, Defendant Banta both expressly states (motion 2) and suggests (motion 2-1) that there is no dispute concerning the nature of the injuries Mr. Earvin suffered or the cause of death. These representations are inaccurate. Defendant Banta has clearly indicated to the government and the Court that there is a dispute (or at least an unwillingness to stipulate) concerning the manner in which the alleged assault occurred, the location where the assault occurred, the severity and viciousness of the assault and Mr. Earvin's injuries (including a possible brain injury), the persons responsible for the assault, and their intent, and the cause of Mr. Earvin's death. Thus, the only authority cited by Defendant Banta, *Gomez v. Ahitow*, 29 F.3d 1128, 1139 (7th Cir. 1994) and *Ferrier v. Duckworth*, 902 F.2d 545, 548 (7th Cir. 1990), where the victim's death was not at issue, is inapposite and not supportive of his motion. Moreover, the defendants in this case "may not stipulate or admit [their]

way out of the full evidentiary force" of the government's case. *Old Chief*, 519 U.S. at 186. Rather, the government must be given an opportunity "to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight." *Id.* at 187.

Accordingly, the government respectfully requests that Defendant Banta's motion in limine 2-1 be denied.

Respectfully submitted,

DOUGLAS J. QUIVEY
ACTING UNITED STATES ATTORNEY

By:   *s/Timothy A. Bass*
Timothy A. Bass, MO Bar No. 45344
Assistant United States Attorney
318 South Sixth Street
Springfield, IL 62701
Phone: (217) 492-4450
tim.bass@usdoj.gov

s/Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_s/Timothy A. Bass_
Timothy A. Bass, MO Bar No. 45344
Assistant United States Attorney
318 South Sixth Street
Springfield, IL 62701
Phone: (217) 492-4450
tim.bass@usdoj.gov
