**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19-cr-30067 |
| | ) |
| TODD SHEFFLER and | ) |
| ALEX BANTA, | ) |
| | ) |
| Defendant. | ) |

**ORDER RULING ON DEFENDANT BANTA'S
MOTION FOR RECONSIDERATION OF THE COURT'S
ORDER REGARDING FOUR OF DEFENDANT BANTA'S
PROPOSED VOIR DIRE QUESTIONS (d/e 162)**

Background

This matter is set for jury trial commencing Monday, January 3, 2022. Jury selection is scheduled to commence on January 3, 2022, at 9:00 a.m. before U.S. Magistrate Tom Schanzle-Haskins.  If Judge Schanzle-Haskins is unable to conduct jury selection on January 3, 2022, jury selection shall be conducted by U.S. Magistrate Judge Eric Long commencing on January 4, 2022 at 9:00 a.m.  In preparation for jury selection, Defendant Banta submitted proposed voir dire questions (see d/e 87).  The Court entered an Order Ruling on Defendant Banta's proposed Voir Dire Questions (d/e 161) on July 30, 2021.  Defendant Banta filed a Motion for Reconsideration of

the Court's Order Regarding Four of Defendant Banta's Proposed Voir Dire Questions (d/e 162).  Specifically, Defendant Banta requested a reconsideration of the Court's ruling on Banta's Questions:

    23 – Healthcare Experience

    30 – Race

    37 – Black Lives Matter / Blue Lives Matter / Defund the Police

    39 – Religious / Moral Beliefs

Pursuant to Text Order entered June 2, 2021, by United States District Judge Richard Mills, Defendant Sheffler joined in Defendant Banta's proposed voir dire questions.  Pursuant to Text Order entered November 2, 2021, Defendant Sheffler joined in Defendant Banta's motion to reconsider.

The United States has filed a Response to Defendants' Motion for Reconsideration Regarding Proposed Voir Dire Questions (d/e 173).

The Court will consider the questions on which the Defendants seek reconsideration in the order in which they were presented in the Defendant's Motion.

## QUESTION 23 – HEALTHCARE EXPERIENCE

The Defendant's original question 23 is titled:  Healthcare Experience.  Question 23 consists of eight separate questions regarding the experience of prospective jurors, their relatives, close friends, or other

household members in various healthcare fields (d/e 87, p 26).  The Government filed a blanket objection to the Defendant's original proposed voir dire questions, Government's Response to Defendant Banta's Proposed Voir Dire Questions (d/e 121).  The Government filed specific responses to the Defendant's Motion for Reconsideration (d/e 173) (Government's Response).

The Court, in it's initial ruling on Question 23, indicated the Court would not ask Question 23 because it is overbroad and not sufficiently related to issues in this case (d/e 161, p 13).

The Defendants, in their request for reconsideration of Question 23, state that "a key issue in this case is whether Defendant Banta's conduct caused serious bodily injury or death to the inmate".  Defendant Banta indicates that the jury will hear testimony from five doctors, two of whom will be giving opinion testimony, and the jury will be given numerous medical records and will hear direct and cross-examination about medical terms and procedures.  The Defendants assert that a key issue of the case is whether the Defendants' conduct caused serious bodily injury or death to the inmate alleged to have been deprived of his civil rights by the Defendants.

In the Government's Response (d/e 173) to the Defendant's motion to reconsider, the Government points out that one of Defendant's proposed questions, included in the Defendant's original Question 23, states "as you heard from the Court's summary of the claims in this case, one claim involves plaintiff's claim that he has a certain medical condition."

The parties Agreed Statement of the Case (d/e 125) makes no reference to any claim that anyone involved in this case has a "certain medical condition". The Agreed Statement of the Case is a very general statement regarding the allegations of the case involving deprivation of civil rights, conspiracy, obstruction or falsification of a document, and obstruction by misleading conduct. Hence, the jurors, at the time of voir dire, will not have heard a Court's summary claiming there is a "certain medical condition" involved in this case. The Court agrees that the phrasing of portions of the Defendant's Question 23 are confusing and misleading. However, the Government does not deny that there will be medical testimony presented in the case. If medical testimony is to be presented in the case, it is appropriate to inquire regarding the prospective jurors' knowledge on healthcare related issues. It is appropriate to convey to prospective jurors with such knowledge that their decision on any verdict

in this case must be based only upon the evidence presented during the trial and the law given to the jury through the Court's jury instructions.

The Court believes that a question regarding the healthcare and medical knowledge of the prospective jurors is appropriate in this case. However, the proposed questions in the Defendant's Question 23 are overbroad and will not be asked by the Court.

The Government correctly points out that the Court's normal voir dire questions to prospective jurors ask the occupation of the prospective juror and his / her spouse for the past five years. The Court's voir dire questions also include an inquiry concerning the occupations of the prospective juror's children. Given the fact that a prospective juror, or a prospective juror's spouse, may have been employed in the medical field more than five years prior to their jury service, the Court will ask this additional question of the individual prospective jurors:

> Have you, your spouse, or any of your children, worked in the healthcare field, including as a doctor, nurse, licensed practical nurse, certified nurse's assistant, or a physician's assistant?

If the answer is in the affirmative, the Court will illicit details regarding the prior employment. The Court will then also ask the following question of the prospective juror:

> As a juror, you must decide this case based upon evidence presented in the courtroom and the law as provided to you by the Judge. Do

you have any problem with putting aside any medical or healthcare knowledge you may have acquired though your prior employment and deciding this case based only on the medical evidence presented in this courtroom during the trial and the Judge's instructions on the law?

The question stated above is a sufficient inquiry into the prospective juror's ability to put aside any medical information acquired in previous employment.  The question, however, does not include all individuals included in the Defendant's proposed Question 23 which asks about knowledge of relatives, close friends, or other household members.  Consequently, the Court will ask a general question of all prospective jurors, as follows:

> Do any of you have a relative, close friend, or other household member, who has worked in the healthcare field as a doctor, nurse, licensed practical nurse, certified nurse's assistant, or a physician's assistant?

The Court will then follow up with a question regarding the description of any knowledge the prospective juror may have acquired from the individuals described in the question and ask the same question regarding use of that medical knowledge set forth above.

## QUESTION 30 – RACE

The Defendants request the Court reconsider its prior ruling regarding Question 30 – Race.  The Court previously denied Defendant Banta's request to ask the multiple questions contained in Question 30 (d/e 161, p

10).  In that ruling, the Court noted that the questions contained in Question 30 were overbroad and appeared to be designed to present argument to prospective jurors.  The Court previously ruled, in its denial to ask the questions set forth in Defendant's Question 30, that it would give the following instruction to the jury:

> Under the law of the United States, all people regardless of their race are entitled to equal treatment under the law.  Do any of you have any problem with this concept?

The questions contained in the Defendant's previously tendered Question 30 consist of seven separate questions.  The Court, upon additional review of the questions, still finds that the questions are overbroad.  For instance, the first question suggested by the Defendant is as follows:

> What kind of experiences, if any, have you, or has any family member, relative or close friend, had over the years with people of other races?

Many of the other proposed questions are equally broad.  These questions would illicit experiences from the lifetime of each of the prospective jurors.  Asking the questions could potentially present many views which are irrelevant or of limited relevance in this case.  Additionally, the answers to such questions would expend a great deal of time in questioning the prospective jurors.

The Seventh Circuit indicated it can be an abuse of discretion for the judge to refuse to voir dire a jury on the subject of racial or ethnic bias when the defendant makes such a request.  United States v. Hosseini, 679 F.3d 544, 555 (7th Cir. 2012).  Refusal to ask a question proffered by defendant as to possible racial prejudice was reversible error.  United States v. Robinson, 466 F.2d 780, 782 (7th Cir. 1972).

The Court believes a question which is more specific than the question set forth above should be presented to the prospective jurors in voir dire.

Consequently, in addition to the question set forth above, the Court will ask the following question of the prospective jurors:

> This case involves charges of conspiracy to deprive an individual of his civil rights.  The Defendants in this case are Caucasian and the person alleged to have been deprived of his civil rights is African-American.  Do any of you have any feelings or beliefs about or toward Caucasians or African-Americans that you believe would make it difficult for you to be a fair and impartial juror in this case?

The Court believes that this question is tailored to the facts of this case and should illicit any bias based on race from the prospective jurors.

The Court will ask this question to the prospective jurors as a group. Questioning prospective jurors as a group is sufficient to satisfy the Sixth Amendment even when the defendant belongs to a racial, ethnic, or religious minority and a juror bias might be of concern.  Hosseini, 679 F.3d

at 555.  An affirmative answer to the question may require individualized questioning.

The Government argues the cases cited by the Defendants are inapplicable here because, in the cited cases, the courts were concerned in protecting the rights of minority defendants.  The Seventh Circuit has noted that the holding of the United States Supreme Court in <u>Aldridge v. United States</u>, 283 U.S. 308, 315 (1931), regarding questioning prospective jurors on racial prejudice is not limited to cases involving a Black defendant and a white victim.  <u>United States v. Booker</u>, 480 F.2d 1310, 1311 (7th Cir. 1973)

**QUESTION 37 – BLACK LIVES MATTER / BLUE LIVES MATTER / DEFUND THE POLICE**

Defendants ask the Court to reconsider its ruling concerning their prior request for voir dire of prospective jurors on the Black Lives Matter, Blue Lives Matter, and Defund the Police national news stories.  The proposed questions generally ask the prospective jurors whether or not they, or their family members, have been following news stories concerning the Black Lives Matter, Blue Lives Matter, or Defund the Police movements.  The questions then ask the prospective jurors their views on the movements and whether they participate in the movements.  The Court declined to ask those questions (See Order, d/e 161, pgs 11-12).  When

declining to ask those questions, the Court noted that the wide-ranging topics sought to be discussed in voir dire by defense counsel may suggest to prospective jurors that they should consider matters outside the evidence and law presented in court and, potentially, could interfere with the jurors decision and deliberations in this case.

The only Seventh Circuit authority cited by the Defendants in support of their voir dire questions regarding the experience and attitudes of the prospective jurors concerning Black Lives Matter, Blue Lives Matter, and Defund the Police movements is the Seventh Circuit decision in <u>United States v. Betts-Gaston</u>, 860 F.3d 525, 531-532 (7th Cir. 2017).  The defendants in <u>Betts-Gaston</u> were charged with a scheme to defraud homeowners and mortgage lenders facing foreclosure.  The defendants were charged with convincing  homeowners facing foreclosure to participate in a fraudulent program which  arranged for straw buyers to obtain mortgages to buy the defendants' home.  The charges involved arranging for homeowners to fill out loan applications that inflated their income and misrepresented the purpose of the purchases.  In that case the defendants requested the court to ask questions of the prospective jurors' experience with "foreclosure rescue businesses" and their attitudes toward lawyers.  The court declined to question the prospective jurors on these

topics.  The Seventh Circuit held that the District Court did not abuse its discretion in refusing to question the prospective jurors on those topics.

In discussing the defendants' request for questioning regarding foreclosure rescue businesses and attitudes toward lawyers, the Court discussed the reversal of the convictions of the defendants in United States v. Dellinger, 472 F.2d 340 (7th Cir. 1973).  Dellinger involved reversal of convictions of anti-war protesters involved in protests against the war in Viet Nam.  Those protesters were charged under the 1968 *Federal Anti-Riot Act* for their conduct in engaging in and inciting demonstrations at the 1968 Democratic Convention in Chicago, Illinois.  Defendants argue that the Court needs to "harken back to the days of the anti-war movement and Viet Namese war protests that we all witnessed and read about".  Without citing the case, the Defendants indicate that the citation of Dellinger in the Betts-Gaston opinion should provide a basis for asking questions on social movements such as Black Lives Matter, Blue Lives Matter, and Defund the Police.

The argument ignores the fact that the court in Betts-Gaston, while discussing the anti-war cases, held that the issues in Betts-Gaston did not rise to the level of importance of the anti-war movement involved in the Seventh Circuit's decision in Dellinger.  That rationale applies to the

questions suggested in this case. The defendants in Dellinger, directly participated in the anti-war movement and demonstrations which prompted their indictment under the *Anti-Riot Act*. There was evidence in the trial regarding the defendants' conduct concerning their participation in the disturbances in Chicago during the 1968 Democratic Convention. In contrast, the facts in this case involve allegations of deprivation of civil rights of a prisoner incarcerated in a state prison located in Illinois. In Dellinger, evidence about the defendants' activities in the anti-war movement formed a central focus in the trial. In contrast, the Black Lives Matter, Blue Lives Matter, and Defund the Police movements are not topics about which evidence will be presented to the jury at trial. The Dellinger defendants were participants in the anti-war movement and demonstrations which formed the factual basis of the prosecution. In this case, evidence regarding Black Lives Matter, Blue Lives Matter, and Defund the Police is not an issue in the case.

The only other case cited by the Defendants in support of their request for voir dire on Black Lives Matter, Blue Lives Matter, and Defund the Police, is the decision of the Third Circuit in United States v. Robinson, 475 F.2d 376, 381 (D.C. Cir. 1973). The case was cited in the Betts-Gaston opinion. Again, the Betts-Gaston court did not hold that the Third

Circuit's opinion in the Robinson decision was applicable. Robinson involved the failure to voir dire prospective jurors on self-defense. The court in Robinson submitted jury instructions as to the law of self-defense which the Third Circuit characterized as "clear and complete". Self-defense was directly involved in the trial as a defense. Even with the insertion of self-defense in the case by the defense, the Third Circuit indicated that voir dire on the topic was unnecessary and the instructions of the court on the law were sufficient. Here, there is no possibility that the Court will instruct the jury on the issues involving Black Lives Matter, Blue Lives Matter, and Defund the Police movements. The topics are irrelevant and asking the prospective jurors to give their views of those social movements would only tend to prolong voir dire and promote confusion among prospective jurors as to how those topics might relate to this case.

The Court declines to voir dire the prospective jurors on the Black Lives Matter, Blue Lives Matter, and Defund the Police movements.

**QUESTION 39 – RELIGIOUS / MORAL BELIEFS**

The Court previously indicated it would not ask Defendants' Question 39. The Court indicated it declined to question the prospective jurors about their religious or moral beliefs.

The Defendants' Question 39 contains four questions. The first question asks the prospective jurors whether they have any religious or moral views or beliefs that might affect their ability to serve as a fair and impartial juror. The second question asks them to briefly explain those beliefs.

In the motion to reconsider, Defendants cited Aldridge noting that the Court indicated prospective jurors could be questioned as to their racial or religious prejudices. Aldridge, 283 U.S. at 314-315. In Booker, the Seventh Circuit, in ruling that it was error to refuse to question prospective jurors on the possible racial prejudice against a Black defendant, repeated the language from Aldridge concerning allowing questions on racial or religious prejudices. Booker, 480 F.2d at 1310, 1311.

The Defendants' motion to reconsider cites the Seventh Circuit opinion in United States v. Stafford, 136 F.3d 1109 (7th Cir. 1998). In Stafford, a prospective juror was struck by the prosecutor using a peremptory challenge. Defense counsel made a Batson challenge to the use of the peremptory challenge. See Batson v. Kentucky, 476 U.S. 79, 96-98 (1986). On appeal, the defendant argued that the Batson challenge should be extended to apply to religion as the Government asserted that the religious convictions of the juror were given as the non-discriminatory

reason for the Government's response to the Batson challenge. In ruling on the issue, the Seventh Circuit stated that it would be improper and perhaps unconstitutional to strike a prospective juror on the basis of the denomination of the juror, such as being a Catholic, Jew, or a Muslim. The court noted, however, that it would be proper to strike a prospective juror on the basis of a belief that would prevent the juror from basing the juror's decision on the evidence and instructions even if the belief had religious backing. Defense counsel in Stafford had failed to cite religion as a basis for his Batson challenge. The court ruled that the challenge based on religion was not plain error if it was error at all. Stafford, 136 F.3d at 113-114.

Even though the statement in Stafford appears to be dicta, the Court believes it provides a basis for asking a voir dire question regarding whether a religious belief of a prospective juror would prevent the juror from basing a verdict only on the evidence presented and the instructions given by the Court. There has been no authority presented to the Court regarding the propriety of asking the same questions based upon "moral" grounds. While religious convictions may be subject to definition, whether or not "moral" grounds are sufficient is a much more nebulous concept. Hence, the Court will not ask questions regarding the "moral" beliefs of

prospective jurors and whether or not those beliefs would keep the prospective jurors from basing a verdict on the evidence presented and instructions given during the trial.  A moral reservation would be included within Judge Schanzle-Haskins' Juror Question 31.

The Court will ask the following question regarding religious beliefs of prospective jurors.  The question will be asked to the prospective jurors generally as opposed to individually.  If an answer in the affirmative is given, the Court will ask appropriate follow-up questions of the individual prospective juror.

> Do any of you have religious beliefs which would keep you from deciding this case based only upon the facts presented in court during the trial and the instruction on the law given to you by the Judge?

IT IS THEREFORE ORDERED that Defendant Banta's Motion for Reconsideration of the Court's Order Regarding Four of Defendant Banta's Proposed Voir Dire Questions (d/e 162) is ALLOWED in part as stated above.

ENTERED:   November 8, 2021

__s/ Tom Schanzle-Haskins_____
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE