IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-30067 |
| | ) |
| TODD SHEFFLER, | ) |
| WILLIE HEDDEN, and | ) |
| ALEX BANTA. | ) |
| | ) |
| Defendants. | ) |

**<u>GOVERNMENT'S REPLY</u>**

The United States of America, by its attorneys, Gregory K. Harris, United States Attorney for the Central District of Illinois, and Timothy A. Bass, Assistant United States Attorney, respectfully submits its reply to Defendant Sheffler's response to the government's motion to revoke proffer agreement and to allow admission of post-proffer statements at trial in the government's case-in-chief and request for hearing. The government states the following:

In the government's motion to revoke Defendant Sheffler's proffer agreement and to allow admission of post-proffer statements at trial, the government, relying on the controlling circuit authority

in *United States v. Reed,* 272 F.3d 950 (7th Cir. 2001), clearly stated that the basis for its motion was that Defendant Sheffler violated the terms of the proffer agreement (requested and signed by him and his counsel) that required him to provide complete and truthful information to the government. In support of its motion, the government attached Defendant Sheffler's proffer agreement, which expressly provides that should he "knowingly make any false statement or omission of any kind in providing information or testimony under this agreement, the government will be entitled to use his statements and evidence he provides, directly and indirectly, to institute and support a criminal prosecution for any offense as well as a prosecution for giving false statements and perjury." (Gov.Ex.63 at p.2). In addition, the government provided a listing of the five different areas in which Defendant Sheffler made false, minimizing, and incomplete statements to the FBI during interviews in March 2019 and a pre- and post-polygraph interview in May 2019 and a detailed summary of the trial evidence before this Court that establishes that Defendant Sheffler's statements were in fact false and incomplete and therefore a violation of the terms of his proffer agreement.

In his 13-page response to the government's motion, however, Defendant Sheffler largely does not address the basis of the government's motion, instead mischaracterizes the government's motion as an attempt to enforce the impeachment provision of the proffer agreement, and further again mischaracterizes or entirely omits the applicable law and makes irrelevant and speculative claims about the government's belief in the sufficiency of the evidence and why the government did not file the motion during the first trial. The government respectfully submits this reply to Defendant Sheffler's response:

First, Defendant Sheffler makes no real effort to dispute the basis of the government's motion. It is not until page 13 of his response, and only then in one sentence of one-paragraph and in a conclusory manner, without citation to any legal authority or trial or other evidence, that he states: "it should be clear that the evidence as it currently stands does not support a finding that Defendant knowingly made any false statement or omission in his proffer to the government." (Def.Sheff.Resp. at 13) It has long been settled law in this Circuit, however, that "perfunctory and undeveloped arguments, and arguments that are unsupported by

3

pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

Here, despite significant notice that began even before the indictment in this case and now a detailed motion from the government to revoke his proffer, with a full opportunity to respond, Defendant Sheffler does not dispute the controlling authority applicable to the government's motion or the fact that he made multiple statements to the FBI during interviews in March 2019 and pre- and post-polygraph interviews (relating to a polygraph that he and his counsel requested) in May 2019. Similarly, he asserts no real dispute, in light of the sworn testimony from multiple witnesses and other evidence presented before this Court at trial, that at least one of his statements was false, minimizing, and/or incomplete.

Moreover, rather than disputing the government's motion, Defendant Sheffler also makes an entirely irrelevant and inaccurate claim that because the government did not file the motion to revoke prior to the first trial, the government "did not view the evidence in its possession as sufficient to void the proffer agreement." (Def.Sheff.Resp. at 12) He does so knowing full well that his

speculative claim about the government's view of the evidence is false,[1] that the only reason the government did not file the motion prior to the first trial was because it was prohibited from introducing his post-proffer statements in a joint trial with Defendant Banta under *Bruton v. United States*, 391 U.S. 123 (1968), and that, as a result, the government made the strategic decision not to seek a severance, resulting in two trials, or make the unrealistic request to this Court, in light of COVID-19, to empanel separate juries. This strategic decision was then exploited by counsel for Defendant Sheffler, who repeatedly violated the impeachment provisions of the proffer agreement during the trial and thwarted the government's efforts to enforce it, leaving the government without a remedy. Finally, not only is this claim about the government's belief prior to the first trial irrelevant and inaccurate, it is also disingenuous and self-discrediting because as Defendant Sheffler himself acknowledges in his response, "a retrial

---

[1] Given Defendant Sheffler's false, incomplete, and inconsistent statements to the FBI, both before and after a polygraph exam that he and his counsel requested, and the sworn testimony from multiple witnesses and other evidence before this Court at trial, the government has never doubted that more than a preponderance of the evidence establishes that Defendant Sheffler violated his proffer agreement, entitling the government to introduce his statements in its case-in-chief at trial.

after mistrial is not a continuation of the earlier trial; it is an entirely new trial." (Def.Sheff.Resp. at 9)[2] And the restrictions on the government's ability to file a motion to revoke the proffer agreement prior to or during the first trial are no longer present. Accordingly, the government respectfully submits that because

---

[2] Defendant Sheffler's irrelevant and disingenuous claim is also similar to that rejected by the court in *United States v. Nesbitt:*

> The thrust of defendant's argument in opposition appears to be that the government was dilatory in announcing its intent to hold defendant in breach of the proffer agreement and that allowing use of defendant's statements with such late notice would amount to trial by ambush. This argument ignores the fact that the government first alerted the defense to the proffer agreement issue in its response to defendant's motion to suppress, in which he raised an issue concerning the ownership of his home that was inconsistent with his proffer statement. The issue again arose in the context of defendant's later-withdrawn motion to sever, in which he raised an issue concerning his staged death that was inconsistent with his proffer statement. Finally, the government learned of defendant's lack of truthfulness, at least with regard to the Clarke issue, on the eve of trial through witness interviews. Thus, contrary to defendant's assertion otherwise, defendant's breach of his proffer agreement has been a consistent theme throughout this case, and the government's pretrial motion in limine to allow use of the proffer statements hardly amounts to an ambush.

2010 WL 3701337, at *5 n.2. (D. S.C. Sept. 14, 2010). As in *Nesbitt,* Defendant Sheffler's breach of his proffer agreement "has been a consistent theme throughout this case," and, again, he acknowledges that "a retrial after mistrial is not a continuation of the earlier trial; it is an entirely new trial." (Def.Sheff.Resp. at 9) Defendant Sheffler's speculation, despite clear knowledge to the contrary, about why the government did not file the motion to revoke prior to or during the first trial is therefore irrelevant to the actual merits of the government's motion.

Defendant Sheffler has made no effort, either legally or factually, to dispute the government's motion, he has waived that argument. *See Berkowitz*, 927 F.2d at 1384 (finding waiver where defendant made "no attempt to refute the government's analysis either legally or factually."); *see also Nesbitt,* 2010 WL 3701337, at *5 (noting that "Defendant had a lawyer during this process, and his lawyer also signed the agreement."; "Moreover, the court notes that defendant has not contested, either in his opposition brief or in open court, that he breached the agreement" by failing to disclose relevant information.)

In any case, the government will present evidence at the evidentiary hearing (including testimony and transcripts of the sworn testimony and other evidence before this Court at the first trial) to establish by a preponderance of the evidence that after he and his counsel executed a proffer agreement with the government, Defendant Sheffler knowingly made false, minimizing, and incomplete statements to the FBI in March 2019 and during pre- and post-polygraph interviews with the FBI in May 2019, any one of

which is constitutes a violation of the proffer agreement.[3] (Gov.Ex. 63). Moreover, "after being repeatedly notified [that his] lies were being considered by the government to be a material breach of the agreement, neither [Defendant Sheffler] nor his attorney made any attempt to rectify the situation and disclose the complete truth before trial." *Reed,* 272 F.3d at 954-55. As a result, Defendant Sheffler's "falsehoods and the absence of an effort to remedy them, indeed, his display of utter apathy in cooperating with the government at all, constituted an unambiguous violation of his agreement. . . The violation rendered the agreement null and void . . . and destroyed any use immunity that [Defendant Sheffler] otherwise might have enjoyed vis a vis the statements that inculpated him." *Id.* Accordingly, under the settled law of this Circuit and the plain language of Defendant Sheffler's proffer

---

[3] Unless Defendant Sheffler disputes that he and his counsel requested the polygraph examination, or the voluntary circumstances of the exam, including the pre- and post-polygraph interviews and his obligation to be complete and truthful during those interviews, or the results of the exam, the government does not intend to rely on the results of the exam to prove that Defendant Sheffler breached the proffer agreement. The government notes, however, that use of polygraph examinations are appropriate in the context of a proffer agreement. *See, e.g, United States v. Daniels,* 2006 WL 1888823, at *1 (4th Cir. Jul. 10, 2006); *United States v. Partman,* 2018 816251, at *7 (D. S.C. Feb. 9, 2018).

8

agreement, if the government establishes by a preponderance of the evidence that Defendant Sheffler violated the agreement in any way, "the government [is[ free to use [his] statements against him at trial." *Id.* at 955; *see also United States v. Meyer,* 157 F.3d 1067, 1078-79 (7th Cir. 1998) (affirming district court's finding that defendant breached immunity agreement; "Meyer's agreement expressly required Meyer to make a complete and truthful statement regarding his knowledge of criminal offenses and did not contain any exceptions."); *Nesbitt,* 2010 WL 3701337, at **3-6 (citing *Reed* and finding that defendant breached provision of proffer agreement obligating him to be complete and truthful and allowing the government to present his proffer statements in the government's case-in-chief).

Second, despite the government's clear statement that the basis for its motion to revoke the proffer agreement is that Defendant Sheffler violated the conditions requiring him to provide "complete and truthful information to . . . law enforcement officials" and not make "make any false statement or omission of any kind" or "conceal or minimize his own actions or involvement in any offense[,]" (Gov.Ex. 63), Defendant Sheffler mischaracterizes the

9

government's motion as an attempt to enforce the impeachment provisions of the proffer argument. This is a meritless claim, further demonstrating the weakness of his opposition to the government's motion.

As made clear in the government's motion and repeated in this reply, the basis of the government's motion is simply to enforce the clear and unambiguous conditions of Defendant Sheffler's proffer agreement that obligated him to provide "complete and truthful" to the government. (Gov.Ex. 63) As *Reed* and *Nesbitt* (citing *Reed*) and other cases make clear, a "[f]ailure to be fully truthful in the proffer—when the proffer requirement requires truthfulness—is one way that defendants can breach their proffer agreements." *Nesbitt*, 2010 WL 3701337, at *4; *see also, e.g., Reed*, 272 F.3d at 954-55; *Meyer*, 157 F.3d at 1078-79. The relevance of Defendant Sheffler's repeated violations of the impeachment provisions of the proffer agreement during the first trial to the government's current motion is that, as in *Reed,* not only did Defendant Sheffler and his attorney fail to make "any attempt to rectify the situation and disclose the complete truth before trial[,]" even after being repeatedly notified by the government that Defendant Sheffler was in violation of the

proffer agreement, 272 F.3d at 954, counsel for Defendant Sheffler misled the jury during closing argument and thereafter engaged in further efforts to thwart the government's efforts to enforce the agreement. As one court has noted, "it is difficult to conceive of a good faith basis for an argument by counsel that contradicts her client's own statements made when the client had great incentive to tell the truth." *United States v. Gomez,* 210 F.Supp.2d 465, 476 (S.D.N.Y. 2002). Because Defendant Sheffler breached his agreement to provide complete and truthful information to the government, entitling the government to present his statements in its case-in-chief, it is unnecessary for the Court to address the impeachment provision of the proffer agreement. *See Nesbitt, 2010 WL 3701337, at *3 n.1* ("The government's alternative requested relief is not necessary because the court grants its primary requested relief and because defendant did not trigger the 'rebut' provision of the proffer agreement at trial. It is clear, however, that if defendant had triggered this provision, the government would have had a separate basis, aside from defendant's untruthfulness, to offer the proffer statements at trial.").

Third, despite controlling authority in this Circuit to the contrary, counsel for Defendant Sheffler continue to assert the unprecedented and unsupported claim to this Court that their closing arguments are not subject to the plain language of the proffer agreement or a good faith restriction, and that "the impeachment/rebuttal remedy must be both triggered and enforced *before* closing arguments begin." (Def.Sheff.Res. at 9) Although, as noted above, it is not necessary to address the impeachment provision of the proffer agreement for purposes of the government's motion, this remarkably nonsensical and frivolous argument unfortunately compels a reply.

As an initial matter, and most troubling about counsel for Defendant Sheffler's unsupported argument, is that it is a clear request for this Court to issue a license to counsel to knowingly mislead the jury and the Court by making a closing argument, which is indisputably an assertion of facts, that is directly contrary to the truth and therefore the truth-seeking function of a trial and the judicial process. It is also directly contrary to the Seventh Circuit's clear holding (and not dicta) in *United States v. Krilich*, that "[o]ne can 'otherwise present' a position through arguments of

counsel alone, so it is easy to see how a position can be 'presented' by evidence developed on cross-examination and elaborated by counsel." 159 F.3d 1020, 1025 (7th Cir. 1998). Like Defendant Sheffler's proffer agreement, which provides that his statements may be used as impeachment or rebuttal evidence if he should "subsequently testify or *take a factual position contrary* to the information he provides[,]" (Gov.Ex. 63 at 1) (emphasis added), the proffer agreement in *Krilich* provided that should the defendant "otherwise *present a position* inconsistent with the proffer, nothing shall prevent the government from using the substance of the proffer at sentencing for any purpose, at trial for impeachment or in rebuttal testimony, or in a prosecution for perjury." *Id.* at 1024 (emphasis added). Thus, there is no difference between the proffer agreement of Defendant Sheffler and the agreement in *Krilich*. And until Defendant Sheffler's unsupported argument in this case, it has been "well settled in this Circuit that once the defendant has entered into a proffer agreement, if he then offers evidence or arguments at trial inconsistent with the information provided in his proffer, the government may introduce the contents of the proffer."

*United States v. Peel*, 2006 WL 3804846, at *4 (S.D. Ill. Dec. 22, 2006) (citing *Krilich*).

Moreover, Defendant Sheffler's argument is contrary to Local Rule 12.1, which provides that a pleading is a certification by an attorney that it is "well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Finally, at a minimum, Defendant Sheffler's unsupported argument is, again, as in *Reed* and *Gomez,* further evidence of his "falsehoods and the absence of an effort to remedy them," and thus "an unambiguous violation of his agreement[,]" *Reed*, 272 F.3d at 954-55, and evidence of a lack of good faith. *Gomez*, 210 F.Supp.2d at 476 ("it is difficult to conceive of a good faith basis for an argument by counsel that contradicts her client's own statements made when the client had great incentive to tell the truth.").

**<u>Government's Request to Enforce Unsworn Witness Rule and Notice that Mr. Vig May be a Necessary Witness</u>**

Counsel for Defendant Sheffler have repeatedly attempted to put their own credibility at issue in this case by making unsupported and inaccurate assertions to the jury and the Court, including during and following closing argument. (*See* 4/22/22 Tr. at 34-45 ("I was there, and that's not what he said."; "But the government does not appreciate, I think, that when it twists arms, people often say what they think the government wants to hear"; "the government has been using this agreement as a cudgel throughout the trial."). As a result, the government has requested that counsel for Defendant Sheffler advise the government if they intend to dispute whether Defendant Sheffler made any of the post-proffer statements during which Mr. Vig was present that are at issue in the government's motion to revoke the proffer agreement. Counsel have declined to definitively state whether they intend to raise such a dispute.

"[T]he 'attorney as witness' problem arises not only when an attorney testifies, but also when an attorney puts his own credibility at issue by questioning the witness about alleged conversations

between that witness and himself. Such questioning, without the attorney's formal testimony, may create an improper inference in the minds of the jury. This situation is known as the 'unsworn witness' problem, and it is by itself an adequate grounds for disqualification." *See, e.g., Thomas Steel Corp. v. Ameri–Forge Corp.*, 1991 WL 280086, at *2 (N.D. Ill. Dec.27, 1991).

In this case, the government respectfully requests that the Court enforce the unsworn witness rule by either precluding Mr. Vig from conducting the cross-examination of witnesses at the motion hearing or, alternatively, prohibiting either counsel from injecting their own credibility during any cross-examination. Such enforcement will prevent the unsworn witness problem and eliminate the need for Mr. Vig as a necessary witness at the hearing and at trial.

        Respectfully submitted,

        GREGORY K. HARRIS
        UNITED STATES ATTORNEY

        By:  *s/Timothy A. Bass*
             Timothy A. Bass, MO Bar No. 45344
             Assistant United States Attorney

        318 South Sixth Street  
        Springfield, IL 62701  
        Phone: (217) 492-4450  
        tim.bass@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                     *s/Timothy A. Bass* .
                                     Timothy A. Bass, MO Bar No. 45344
                                     Assistant United States Attorney
                                     318 South Sixth Street
                                     Springfield, IL 62701
                                     Phone: (217) 492-4450
                                     tim.bass@usdoj.gov